FILED

2013 FEB 12 PM 12:06

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIN LAY,<br><br>            Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>            Defendant. | CASE NO. 11cv1125-W(KSC)<br><br>REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT<br><br>[Doc. Nos. 26 and 27] |

Presently before the Court are: (1) plaintiff's Motion for Summary Judgment [Doc. No. 26]; (2) defendant's Cross Motion for Summary Judgment [Doc. No. 27]; (3) the parties' opposing and reply briefs; and (4) the Administrative Record ("AR") [Doc. No. 21]. After careful consideration of the moving and opposing papers, as well as the Administrative Record and the applicable law, this Court RECOMMENDS that plaintiff's Motion for Summary Judgment [Doc. No. 27] be *DENIED*, and that defendant's Cross-Motion for Summary Judgment [Doc. No. 27] be *GRANTED*.

### Procedural History

**A.    *Original Action Filed on June 19, 2007.***

On June 19, 2007, plaintiff filed a Complaint in Case No. 07cv1112-JLS(NLS) to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner"), pursuant

///

///

to Title 42, United States Code, Section 405(g) of the Social Security Act ("SSA").[1] In this prior action, plaintiff challenged a Decision dated May 26, 2006 denying his application for Supplemental Security Income payments ("SSI") under Title II of the SSA, Title 42, United States Code, Sections 1381, *et seq.* In an Order filed July 22, 2008, the District Court granted summary judgment in favor of the Commissioner as to the issues raised in plaintiff's Complaint. [Case No. 07cv1112-JLS(NLS), Doc. No. 21.] The following background information, which is relevant to the issues raised in the current action, has been taken directly from the District Court's Order of July 22, 2008:

"On November 17, 2004, Plaintiff Rin Lay filed an application for disability benefits under Title II of the [SSA.] Lay alleged that he became disabled on January 1, 2003 due to diabetes, headaches, dizziness, back pain, and arm pain. [AR at 289-95.] From 1995 to 2003, Lay worked as a Buddhist monk. [AR at 289.][2] The Commissioner denied Lay's application both initially and upon reconsideration. [AR at 27-31, 34-39.] Lay requested a hearing before an Administrative Law Judge ("ALJ"), and on April 12, 2006, the ALJ conducted a hearing to consider the merits of Lay's application. [AR at 40, 286.]

The medical evidence before the ALJ showed that Lay received treatment for chronic head pain, low back pain, diabetes, and degenerative discogenic disease of the neck. On March 28, 2005, Dr. Elizabeth Locke performed a complete internal medicine examination of Lay and diagnosed hypertension, type II diabetes, and complaints of daily headaches and dizziness. [AR at 161.] Dr. Locke noted that during the examination Lay was in no apparent distress and had a normal blood pressure. [AR at 21.] The examination revealed a full range of motion in the shoulders bilaterally with tenderness in the left shoulder with abduction. [Id.] X-rays revealed no

///

---

[1] Title 42, United States Code, Section 405(g), provides as follows: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive."

[2] All "AR" references in this section only are to the Administrative Record filed in Case No. 07cv1112-JLS(NLS). [*See* Doc. No. 8.]

significant degenerative changes and no impingement syndrome. [AR at 164.] The results demonstrated a narrowing of disc space and early degenerative disc disease, but were otherwise negative. [Id.] Lay's neurological and cardiovascular exams showed normal limitations. [AR at 21.] Dr. Locke opined that Lay could lift and carry twenty pounds occasionally, and ten pounds frequently, and could stand, walk, or sit for six or more hours during an eight-hour workday. [Id.] Two reviewing state physicians agreed with Dr. Locke's opinion and found that Lay was not disabled. [AR at 172-75.]

On March 28, 2006, another physician, Dr. Minh Nguyen, examined Lay and found that he had one to two headaches per month, but that the headaches had improved and occurred less frequently after medication. [AR at 179.] On April 7, 2006, Dr. Huong Nguyen examined Lay and reported that he had a history of chronic headaches that prevented him from working in an environment with dangerous machinery. [AR at 180.] Dr. Huong Nguyen also completed a functional assessment and found that Lay was limited to sitting and walking for two hours at a time. [Id.]

Aside from reviewing the foregoing medical evidence, the ALJ entertained a vocational expert ("VE") at the hearing. The ALJ presented the VE with various hypotheticals encompassing aspects of Lay's physical and mental limitations. [AR at 297.] The ALJ asked the VE if Lay could continue to work assuming he suffered the limitations diagnosed by Dr. Locke and the reviewing state physicians. In response, the VE testified that Lay would be able to perform his past work as a Buddhist monk. [AR at 298.] The ALJ also presented a similar hypothetical based on Dr. Huong Nguyen's functional assessment. In response, the VE testified that Lay would be unable to work as a monk. [Id.]

After reviewing the medical records and testimony, the ALJ denied Lay's application for disability benefits. [AR at 10-19.] The ALJ found that Lay's impairments, while severe, were not disabling, and that Lay retained the residual functional capacity ("RFC") to perform light level work. [AR at 20-21.] Specifically, the ALJ concluded that Lay could lift/carry twenty pounds occasionally, and ten pounds frequently, and could stand, walk, or sit for six hours in an eight-hour workday. [AR at 21.] In determining the RFC, the ALJ affixed little weight to Dr. Huong

Nguyen's evaluation because he found Nguyen's functional assessment inconsistent with the medical evidence. [Id.]

The ALJ also found Lay's subjective complaints of pain excessive in relation to the objective medical evidence. The ALJ gave multiple reasons for discrediting Lay's complaints, including the following: (1) on March 28, 2005, Lay reported that a CAT scan had negative results; (2) the medical records revealed that Lay's diabetes and hypertension were reasonably well controlled; (3) Lay had undergone conservative treatment; (4) Lay had not taken any medications that had imposed disabling side effects or medications at dosages commensurate with the alleged levels of pain; (5) no treating or examining physician had opined that Lay was totally and permanently disabled from work; (6) Lay was able to participate in the hearing and respond to questioning without any apparent difficulties; and (7) Lay described daily activities that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [AR at 22.] As a result, the ALJ denied Lay's claims for benefits. [Id.]

Lay disagreed with the ALJ's decision and requested an Appeals Council ("AC") review. After reviewing Lay's file and newly submitted evidence, the AC affirmed the ALJ's decision. [AR at 4-7.]" [Doc. No. 21, Order Denying Pl.'s Mot. for Summ. Judg. and Granting Defendant's Mot. for Summ. Judg., No. 97cv1112-JLS(NLS), July 22, 2008, at pp. 1-3.]

Plaintiff appealed the denial of his Motion for Summary Judgment to the United States Court of Appeals for the Ninth Circuit. In an unpublished Memorandum Decision filed April 12, 2010, the Ninth Circuit upheld the ALJ's Decision of May 26, 2006, as well as the District Court's Order granting summary judgment in the Commissioner's favor. The Ninth Circuit specifically rejected plaintiff's arguments that the ALJ failed to develop the record and erred when he found Lay's subjective pain and limitations testimony were not wholly credible. In addition, the Ninth Circuit agreed with the ALJ that the medical records and the conservative course of treatment were sufficient to support the ALJ's conclusion that Lay's physical limitations were not as great as he claimed they were. The Ninth Circuit's Memorandum Decision stated in part as follows: "[T]he ALJ properly resolved conflicts in the evidence, and after reviewing the opinion of a vocational expert, determined that Lay was not entitled to benefits. Substantial evidence supported these determinations." However,

the Ninth Circuit reversed and remanded the case for consideration of new evidence that was presented to the Appeals Council but not considered by the ALJ. This new evidence included new psychiatric reports by Dr. Harry C. Henderson III, Dr. Milton Lessner, and Dr. James S. Grisolia, as well as an MRI of Lay's cervical spine dated May 1, 2006. [Doc. No. 29, Memorandum, No. 08-56458, Apr. 12, 2010, at pp. 3-6.]

### B. Plaintiff's Second Hearing Before the ALJ Held December 17, 2010.

On remand from the Ninth Circuit, the ALJ held a second hearing on December 17, 2010 to determine whether plaintiff qualified for disability benefits at any time between November 17, 2004, the date he first applied for benefits, through May 19, 2008. The relevant time period for the second hearing on December 17, 2010 was November 17, 2004 through May 19, 2008, because plaintiff filed a subsequent application for disability benefits on May 19, 2008, and the ALJ found he was disabled commencing on May 19, 2008. [Doc. No. 21, AR at 304, 442-445.][3] As discussed more fully below, the ALJ determined as a result of the second hearing on December 17, 2010, that plaintiff was not disabled from November 17, 2004 through July 1, 2006. By implication then, the ALJ determined that plaintiff was disabled from July 1, 2006 through May 19, 2008.

Two medical experts, Dr. Samuel Landau, an internist, and Dr. Irwin Shapiro, a psychiatrist, testified at the hearing on December 17, 2010. Dr. Landau's testimony was limited to an opinion as to plaintiff's physical impairments based on the medical evidence of plaintiff's physical condition in the record to date, including the new evidence cited in the Ninth Circuit's Memorandum Decision. Dr. Landau did not testify about the psychiatric evidence in the record. [Doc. No. 21, AR 443-444, 447, 449, 461.] According to Dr. Landau, plaintiff's severe impairments included diabetes, which was controlled to some extent, arthritis of the neck and low back, headaches, and left shoulder pain. [Doc. No. 21, AR 448-449.] These impairments alone or in combination did not meet or equal a condition in the "Listing of Impairments" in the Social Security regulations. 20 CFR § 404.1520(a)(4)(iii). [Doc. No. 21, AR 449.] Dr. Landau also noted that plaintiff is being treated for high blood pressure. [Doc. No. 21, AR 448.]

---

[3] All further "AR" references going forward are to the Administrative Record in the current action, No. 11cv1127-W(KSC). [See Doc. No. 21.]

Based on the objective medical evidence, Dr. Landau testified he would limit plaintiff's work activities to walking two out of eight hours, sitting for eight hours with normal breaks every two hours, lifting and carrying 10 pounds frequently and 20 pounds occasionally, with occasional leg motions, stooping, and bending. Dr. Landau also said plaintiff could climb stairs but not ladders, should avoid extremes in motion and temperature, hold his neck in a comfortable position, and only do work above the shoulders occasionally. In Dr. Landau's opinion, plaintiff could use his hands without limitation. [Doc. No. 21, AR 449-452.]

According to Dr. Landau, there was no evidence in the record indicating plaintiff had more several physical impairments. In reaching his conclusion, Dr. Landau considered an x-ray report from March of 1998 indicating plaintiff has severe degenerative disease of the spine but said there was no evidence this was causing a physical disability. [Doc. No. 21, AR 454-456, 459.] In addition, based on the objective medical evidence in the record, Dr. Landau disagreed with Dr. Nguyen's conclusion that plaintiff's headaches were frequent or severe enough to result in work interruption. [Doc. No. 21, AR 452-453.]

The testimony of Dr. Shapiro, the psychiatric expert, was limited to any psychiatric impairments in the record from November 17, 2004 to May 19, 2008. He testified there was insufficient evidence in the medical records to indicate plaintiff was disabled for psychiatric reasons between November 17, 2004 and July of 2006. [Doc. No. 21, AR 461-462.] However, based on the new psychiatric reports in the record that were submitted after the prior hearing on April 12, 2006, he agreed with the ALJ that the record included enough evidence to show plaintiff's condition had progressed to a major depressive order by July of 2006. [Doc. No. 21, AR 461-463.] He also agreed with the ALJ that plaintiff met Listing 12.04 in July of 2006 and would have been disabled at this time because of severe depression and an inability to concentrate combined with pain from orthopedic and other medical problems. [Doc. No. 21, AR 304, 464-467.]

Dr. Shapiro rejected efforts by plaintiff's counsel to show plaintiff was psychiatrically disabled prior to July of 2006 because his treating physician prescribed medications used to treat depression. According to Dr. Shapiro, the treating physician's notes do not state why these medications were prescribed. These medications could have been prescribed for other reasons, including headaches.

The treating physician's notes indicate plaintiff's headaches decreased as a result of prescribed medication. The notes do not state plaintiff suffered from depression or severe depression prior to July of 2006. [Doc. No. 21, AR 468-469.] Instead, there was a diagnosis of severe depression "[a]ll of a sudden" in 2006. [Doc. No. 21, AR 471-472.]

Robin Scher, a vocational expert, testified plaintiff would have been able to return to his past relevant work as a Buddhist monk until he became psychiatrically disabled in July of 2006. Her analysis was based on the medical expert's recommended physical limitations, as well as other evidence describing plaintiff's duties as a Buddhist monk. [Doc. No. 21, AR 473-476.] First, information provided in connection with the prior hearing on April 12, 2006 stated that plaintiff's duties as a Buddhist monk included studying religious materials and teaching, both of which could be done in a sitting position. [Doc. No. 21, AR 476-477.] Second, Dr. Lessner's report described plaintiff's principal duties as offering prayer services and meditation. Third, Dr. Lessner's report further stated plaintiff's duties included some cleaning, such as sweeping floors, doing laundry, and emptying the trash, that could be done in about two hours a day. Fourth, plaintiff testified that he recalled sweeping the floor, doing laundry, emptying the trash, and cleaning the kitchen and bathroom while he worked in the temple as a Buddhist monk. According to the vocational expert, plaintiff could still perform all of these duties despite the physical limitations recommended by Dr. Landau. [Doc. No. 21, AR 289, 477-480.]

### C. *The ALJ's Decision of January 22, 2011.*

In a Decision dated January 22, 2011, the ALJ determined based on the record as of the hearing held December 17, 2010 that plaintiff "was not disabled prior to July 1, 2006, but became disabled on that date and has continued to be disabled through the date of this decision." [Doc. No. 21, AR 305.] In reaching this Decision, the ALJ made the following relevant findings: (1) Since January 1, 2003, plaintiff has had the severe impairments of "diabetes mellitus type II; degenerative disc disease of the cervical and lumbar spine; hypertension; and headaches." [Doc. No. 21, AR 306-307]; (2) As of July 1, 2006, plaintiff also had the severe impairment of major depressive disorder. [Doc. No. 21, AR 307]; (3) Prior to July 1, 2006, plaintiff did not have an impairment or combination of impairments that met or equaled "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

416.920(d), 416.925 and 416.926)." [Doc. No. 21, AR 309]; (4) Prior to July 1, 2006, plaintiff had the "residual functional capacity to perform light work" with certain limitations indicated in the record. [Doc. No. 21, AR 309-310]; (5) Prior to July 1, 2006, plaintiff was capable of performing his "past relevant work as a Buddhist monk. This work did not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 416.965)." [Doc. No. 21, AR 312]; (6) "Beginning on July 1, 2006, the severity of [plaintiff's] impairments has medically equaled the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." [Doc. No. 21, AR 313] Plaintiff "was not disabled prior to July 1, 2006, (20 CFR 416.920(f) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(d)." [Doc. No. 21, AR 314.]

### D. *The Current Action.*

Plaintiff filed his original Complaint in the current action on May 23, 2011. [Doc. No. 1.] His original Complaint was replaced by a First Amended Complaint on November 1, 2011. [Doc. No. 14, at p. 1.] In the First Amended Complaint, plaintiff challenges the portion of the ALJ's Decision of January 22, 2011 that concludes he was not disabled and did not qualify for disability benefits for the period November 17, 2004 through July 1, 2006. [Doc. No. 14, at p. 3, 6; AR 314.]

### *Discussion*

In his Motion for Summary Judgment, plaintiff argues that the ALJ's Decision of January 22, 2011 should be reversed and the case should be remanded with instructions to award disability benefits as of November 17, 2004, the date plaintiff filed his application for benefits. Plaintiff believes the ALJ's Decision of January 22, 2011 is erroneous because the record shows that his past activity as a Buddhist monk does not qualify as "substantial gainful activity" or "past relevant work" under the SSA.[4] In addition, plaintiff contends that the ALJ erred by disregarding his subjective complaints of disabling pain and by relying on evidence of questionable probative value. Plaintiff also contends the ALJ's Decision of January 22, 2011 is not supported by substantial evidence. [Doc. No. 26.]

---

[4] Although the Commissioner argues that plaintiff waived this issue by not raising it in a timely manner, Supreme Court precedent indicates that the usual waiver rules do not apply in Social Security cases. *See Sims v. Apfel*, 530 U.S. 103, 106-112 (2000). As a result, this Court has addressed the merits of plaintiff's argument.

The Commissioner's moving and opposing papers contend that the ALJ's Decision of January 22, 2011 is supported by substantial evidence, and the ALJ did not err in denying benefits to plaintiff for the period November 17, 2004 through July 1, 2006. The Commissioner therefore argues that the Cross-Motion for Summary Judgment should be granted to uphold the ALJ's Decision of January 22, 2011. [Doc. No. 27.]

### *Standards of Review*

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may 'look no further than the pleadings and the transcript of the record before the agency,' and may not admit additional evidence.[5] *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D.Tenn.1978); 42 U.S.C. § 405(g). Therefore, although summary judgment motions are customarily used, and even requested by the Court or Magistrate, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Kenney v. Heckler*, 577 F.Supp. 214, 216 (D.C. Ohio 1983).

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 CFR § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004).

///

---

[5] In support of the Motion for Summary Judgment, plaintiff submitted 98 pages of information containing complaints by patients about Seagate Medical Group, and argues that the ALJ erroneously disregarded a treating physician's evaluation in favor of a "dubious Seagate evaluation." [Doc. No. 26-1, at p. 18.] However, it is not appropriate for the Court to consider this additional evidence as it is not part of the official record that was before the agency in connection with plaintiff's application for disability benefits. Accordingly, this Court has not considered these materials in the analysis.

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 CFR § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 CFR § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 CFR § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 CFR § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 CFR § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). Where the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision that the court reviews. *Batson*, 395 F.3d at 1193 n.1. A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id.* at 1193.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 259 F.3d at 1193. The Court must weigh both the evidence that supports and detracts from the administrative ruling, and if there is evidence in the record to support the ALJ's conclusion, and the ALJ applied the correct legal standards, the District Court must affirm the ALJ's decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

### A. *"Substantial Gainful Activity" and "Past Relevant Work."*

To support his argument that his past activity as a Buddhist monk does not qualify as "substantial gainful activity" or "past relevant work," plaintiff cites a Disability Determination

Rationale form stating that: "The clmt has no PRW." [Doc. No. 21, AR 76.] This form was completed by a Disability Examiner on or about April 14, 2005, which was prior to a formal hearing on plaintiff's application. The form is not useful evidence because it does not include an analysis or any reasoning for the "no PRW" designation. In addition, as defendant has represented, it is apparent from the record that the ALJ considered additional evidence at the hearing on plaintiff's application that was not available at the time this determination was placed on the Disability Determination Rationale form. [Doc. No. 27-1, at p. 5.]

Plaintiff also believes there is a lack of evidence in the record to show that his role as a Buddhist monk qualifies as "substantial gainful activity" or "past relevant work" under the SSA. According to plaintiff, there is nothing to indicate he was able to perform in this position continuously within the past 15 years, or that he even worked full time long enough to meet the definition of "substantial gainful activity." [Doc. No. 26-1, at p. 8.] In addition, plaintiff claims his position as a Buddhist monk does not constitute "past relevant work" because he did not make any money in this role, so his earnings did not meet or exceed the minimum requirements for "substantial gainful activity" of $500 per month. [Doc. No. 26-1, at p. 8-10.]

According to plaintiff, the record shows that "he never worked." [Doc. No. 26-1, at p. 7.] In an interview on January 21, 2005, plaintiff was asked, "Have you ever worked?" and plaintiff responded, "No." [Doc. No. 21, AR 72.] On January 4, 2005, plaintiff gave the following description of his role as a Buddhist monk: "I have been a [B]uddhist monast [sic] for 20 years, there for [sic] my daily activities are mainly religious and charity purposes, which are praying, chanting, reading and preaching for others. . . ." [Doc. No. 21, AR, at p. 73.] During the hearing before the ALJ on April 12, 2006, plaintiff testified that he was only at the temple twice per week for one to three hours but never for eight hours. [Doc. No. 21, AR, at 291-294.] Therefore, plaintiff contends the record shows that his activities were only enough to constitute non-paid, sedentary, social work which does not qualify as "substantial gainful activity." [Doc. No. 26-1, at p. 10.]

Under Social Security regulations, "work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 CFR § 416.965(a). "Substantial gainful activity is work activity that is both substantial and gainful." 20

CFR § 416.972. "Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 CFR § 416.972(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 CFR § 416.972 (b). According to the SSA's Program Operations Manual System ("POMS"), "pay" is considered "whether in case or in kind. . ." POMS § DI 10501.001.[6] Activities not generally considered to be "substantial gainful activity" include "taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs." 20 CFR § 416.972.

"Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *Lewis v. Apfel*, 236 F.3d 503, 515 ( 9th Cir. 2001). Although guidelines are used to determine whether earnings from a job are enough to meet the "substantial gainful activity" requirement" other information may be considered to make this determination. 20 CFR §§ 416.974(a)(1), (b)(2), & (b)(3)(ii). Other information is generally considered "if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity;" the claimant's work is comparable to similar occupations; or if the work is clearly worth the amounts shown in pay scales in the claimant's community. 20 CFR § 416.974(b)(3)(ii)(A)&(B).

Plaintiff's contention that his role as a Buddhist monk was merely unpaid, sedentary, part-time social work that was not enough to constitute "substantial gainful activity" should be rejected, because it ignores too much of the record. [Doc. No. 26-1, at p. 10] A review of the record reveals more than enough evidence to establish that plaintiff's work as a Buddhist monk did constitute "substantial gainful activity." First, plaintiff's testimony that he was only at the temple twice per week for one to three hours but never for eight hours was limited to his work at the time of the hearing on April 12, 2006, and a "substantial gainful activity" analysis is based on "the last 15 years." 20 CFR § 416.965(a). At the first hearing on April 12, 2006, plaintiff testified he had been a Buddhist monk for "18 years." [Doc. No. 21, AR 289.] Second, other evidence in the record from the original hearing on

---

[6] "The POMS does not have the force of law, but is persuasive authority." *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

1  April 12, 2006 stated that plaintiff's duties as a Buddhist monk included studying religious materials
2  and teaching. Third, plaintiff's role as a Buddhist monk was classified by an occupational expert in
3  connection with the prior hearing on April 12, 2006 as "clergy assistant." [Doc. No. 21, AR 98] As
4  defendant contends, plaintiff's role as Buddhist monk also falls within the definition of "pastoral
5  assistant," which is considered "light work." DICTIONARY OF OCCUPATIONAL TITLES §
6  129.107-026. (1991). Obviously, a Buddhist monk's role is reasonably comparable to other similar
7  occupations that serve as a means of livelihood.

8  Fourth, as noted above, the ALJ held a second hearing after remand on December 17, 2010 to
9  consider new evidence submitted by plaintiff after the hearing on April 12, 2006. The new evidence
10 considered at the December 17, 2010 hearing includes detailed evidence of plaintiff's activities over
11 his years as a Buddhist monk. Dr. Lessner's report states that plaintiff enrolled in a Cambodian
12 monastery at age 28. He was 56 years old at the time he was evaluated by Dr. Lessner. By that time,
13 he had been a Buddhist monk at temples in Cambodia, Seattle, and San Diego. Most recently, he
14 worked at the temple in San Diego for about six years between 1996 and 2004. Dr. Lessner described
15 plaintiff's principal duties as offering prayer services and meditation. Plaintiff's other duties in the
16 temple included some cleaning, such as sweeping floors, doing laundry, and emptying the trash.
17 Fourth, plaintiff recalled during the hearing on December 17, 2010 that while he worked in the temple
18 as a Buddhist monk he swept the floor, did laundry, emptied the trash, and cleaned the kitchen and
19 bathroom. Fifth, plaintiff's argument that his work as a Buddhist monk was only part time is
20 contradicted by Dr. Lessner's report which indicates plaintiff could work as many as eighteen hours
21 in a day. [Doc. No. 21, AR 210, 214-215, 216d, 476-480.]

22 Defendant contends there is strong evidence in the record that plaintiff was compensated "in
23 kind" for his work as a Buddhist monk. Specifically, Dr. Lessner's report explains that plaintiff lived
24 at the Buddhist temple from 1996 until October 2004 and food was prepared and made available to
25 him while he was there. [Doc. No. 21, AR 215.] Plaintiff also testified at the first hearing on April 12,
26 2006 that he previously lived at the temple but moved out because he was ill and could not work so
27 / / /
28 / / /

they were unhappy with him there. [Doc. No. 21, AR 289, 446.] In addition, Dr. Henderson's report states that plaintiff "was fired" from the temple and had to move out because he was ill and could no longer function as a monk. [Doc. No. 21, AR 188.][7]

All of the cited evidence supports a reasonable conclusion that plaintiff's room and board at the temple were directly tied to his ability to function there as a monk and constituted significant compensation "in kind" for his work. It is also apparent that plaintiff's role as a Buddhist monk is similar to that of other members of the clergy and involved significant mental activity, as well as other minor duties that are considered light work. As a result, there is substantial evidence in the record to support a finding that plaintiff's prior work as a Buddhist monk was enough to constitute "substantial gainful activity" and "past relevant work" under Social Security regulations.

### B.   *Plaintiff's Subjective Claims of Disabling Pain.*

Plaintiff claims the record is replete with evidence that he suffered from disabling pain since 1997, which was supported by other medical evidence in the record, but the ALJ erroneously disregarded this evidence.[8] However, plaintiff's arguments in this regard simply rehash those previously made and rejected by the ALJ after the first hearing on April 12, 2006. The ALJ's Decision of April 12, 2006 was largely affirmed by the Ninth Circuit. In this regard, the Ninth Circuit's Memorandum Decision states as follows: "Lay also asserts that the ALJ erred when he found that Lay's subjective pain and limitations testimony was not wholly credible. Again, we disagree. While there were underlying conditions that could be expected to produce pain, the medical records and the conservative course of treatment sufficiently supported the ALJ's determination that Lay's limitations were not as great as he said they were." The ALJ's Decision of April 12, 2006 was only reversed and

---

[7] There is also conflicting evidence in Dr. Lessner's psychiatric report suggesting plaintiff may have left the temple in San Diego because he was unable to get along with the other monks there. [Doc. No. 21, AR 215.]

[8] Without support from the record, plaintiff also argues that the ALJ relied on the opinion of an unqualified medical expert. However, it does not appear that plaintiff objected to the medical expert's qualifications in the course of the administrative hearing. In addition, Dr. Landau's Curriculum Vitae is in the record, and plaintiff has not cited anything to indicate he was not qualified to give an opinion in this case that could be considered by the ALJ. Generally, a medical expert's qualifications and whether they have training in a particular specialty go to the weight of the evidence rather than to admissibility. *See* 20 CFR § 416.927 (evaluating opinion evidence). The District Court's role does not include second guessing an ALJ's reasonable interpretation of the medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

remanded for the consideration of new evidence, including a cervical spine MRI of May 1, 2006, and psychiatric reports by Dr. Henderson, Dr. Milton Lessner, and Dr. James S. Grisolia. [Doc. No. 29, Memorandum Decision, No. 08-56458, at p. 3-4.]

At the new hearing on December 17, 2010, the ALJ and the experts did consider new evidence in accordance with the Ninth Circuit's Memorandum Decision but essentially reached the same conclusions as the experts from the prior hearing. Although the MRI of plaintiff's cervical spine was abnormal and showed impingement of a nerve, the medical expert testified during the hearing on December 17, 2010 that pain was possible but not certain. The medical expert also testified that other medical evidence in the record at or before the time this MRI was completed did not support a finding of disabling pain, and the fact that a treating physician ordered the MRI was not enough, standing alone, to establish that plaintiff had disabling pain. [Doc. No. 21, AR 447-460.]

Although the new psychiatric reports in the record that were referenced in the Ninth Circuit's Memorandum Decision do make statements in summary fashion, such as, "patient has been suffering intense pain and discomfort beginning in 1998," [Doc. No. 21, AR 188] the basis of these conclusory statements is unclear. More importantly, this evidence conflicts with other substantial medical evidence in the treatment records reviewed by the medical expert who testified at the hearing and concluded plaintiff was not physically disabled by pain during the relevant time period. [Doc. No. 21, AR 447-452.] Therefore, as to plaintiff's physical condition, these new psychiatric reports, which were prepared on or about June 28, 2006, June 29, 2006, and July 22, 2006, are not persuasive evidence of disabling pain prior to July of 2006. [Doc. No. 21, AR 188-191, 211-223.] Therefore, the record includes more than enough evidence to support the ALJ's conclusion that plaintiff was not disabled by pain during the period November 14, 2004 through July 1, 2006.

C. *Plaintiff's Residual Functional Capacity.*

Plaintiff also complains that the ALJ erred in finding that from November 17, 2004 through July 1, 2006, plaintiff had the "residual functional capacity to perform light work" with certain limitations indicated in the record, and was capable of performing his "past relevant work as a Buddhist monk." [Doc. No. 21, AR 309-310, 312.] Plaintiff argues that in reaching this determination, the ALJ failed to consider relevant evidence, including plaintiff's testimony about his symptoms, the

opinions of treating physicians, and the level of symptom-related medications. Without citing anything in the record to indicate more aggressive treatment was even recommended, plaintiff argues that the ALJ penalized him by giving controlling weight to his conservative course of treatment. He believes the record shows, based on an evaluation by his treating physician, that his residual functional capacity was at best "part-time sendentary." [Doc. No. 26-1, at p. 23.]

Plaintiff's arguments are nothing new. Once again, plaintiff's arguments merely rehash those previously made and rejected by the ALJ after the first hearing on April 12, 2006. The ALJ's findings were then affirmed by the Ninth Circuit. In this regard, the Ninth Circuit's Memorandum Decision states as follows: "The ALJ determined that based upon what was before him, Lay had the residual functional capacity to perform his prior work as a Buddhist monk. Based upon the record that was before the ALJ, we disagree with the assertion that the ALJ erred. He was not required to discuss each piece of evidence, and it does not appear that he actually rejected probative evidence. [Citation omitted.] Rather, the ALJ properly resolved conflicts in the evidence, and after reviewing the opinion of a vocational expert, determined that Lay was not entitled to benefits. Substantial evidence supported those determinations." [Doc. No. 29, Memorandum Decision, No. 08-56458, at p. 5.]

In accordance with the Ninth Circuit's Memorandum Decision, the ALJ considered new evidence at the second hearing on December 17, 2010. Based on this new evidence and the other evidence considered at the prior hearing on April 12, 2006, the medical expert and the vocational expert essentially reached the same conclusions as the experts in the prior hearing on April 12, 2006. Although the medical expert concluded plaintiff had physical limitations based on his documented medical conditions between November 27, 2004 and July 1, 2006, the vocational expert testified these limitations did not prevent plaintiff from performing his past relevant work as a Buddhist monk during this time period.

///
///
///
///
///

In sum, plaintiff has not presented any new arguments that seriously dispute the sufficiency of the evidence to support the ALJ's Decision that plaintiff was not disabled and was able to perform his past relevant work as a Buddhist monk during the period November 14, 2004 through July 1, 2006. There is simply no basis for concluding that the ALJ's decision was not based on substantial evidence. Under these circumstances, it is RECOMMENDED that the District Court DENY plaintiff's Motion for Summary Judgment and GRANT defendant's Cross-Motion for Summary Judgment.

### *Conclusion*

Based on a review of the Administrative Record and the briefing submitted by the parties, this Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [Doc. No. 27] be GRANTED and that plaintiff's Motion for Summary Judgment [Doc. No. 26] be DENIED, because the ALJ's Decision of January 22, 2011 is supported by substantial evidence.

This Report and Recommendation is submitted by the undersigned Magistrate Judge to the District Judge assigned to this case, pursuant to Title 28, United States Code, Section 636(b)(1). Any party may file objections with the District Court and serve a copy on all parties "[w]ithin fourteen days after being served with a copy" of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

Date: Feb. 12, 2013

KAREN S. CRAWFORD
United States Magistrate Judge